OPINION
{¶ 1} Plaintiff-appellant, Transcontinental Insurance Company, appeals from a judgment of the Franklin County Court of Common Pleas granting the summary judgment motions of defendants-appellees, Exxcel Project Management, Inc. ("Exxcel"), Jezerinac, Geers Associates ("Jezerinac"), and Glavan 
Associates ("Glavan") (collectively, defendants). Because the trial court properly determined plaintiff failed to present a triable issue regarding Jezerinac and Glavan, we affirm that portion of the trial court's judgment, but because the trial court improperly granted summary judgment to Exxcel, we reverse that aspect of the judgment.
 {¶ 2} On November 29, 2002, plaintiff filed a complaint alleging that its insured, Pizzuti Development, Inc. ("Pizzuti"), contracted with Exxcel to design and construct a building on Pizzuti's property, and that the collapse of the structure in July 1997 was due to Exxcel's breach of contract and negligence. Exxcel acted as the contractor for the project, with Jezerinac and Glavan serving as subcontractors. Although Pizzuti lacked privity with Jezerinac and Glavan, plaintiff asserted Pizzuti was a third-party beneficiary of Exxcel's respective contracts with Jezerinac and Glavan and plaintiff, as Pizzuti's subrogee, could maintain its cause of action against the subcontractors.
 {¶ 3} Both Jezerinac and Glavan filed motions for summary judgment but, before the trial court determined the motions, Exxcel filed a cross-claim against both subcontractors. On April 8, 2004, the trial court granted Jezerinac's motion for summary judgment, concluding Pizzuti was not a third-party beneficiary of the contract between Exxcel and Jezerinac and could not prevail in a breach of contract claim against the subcontractors. Acknowledging plaintiff's concession that its negligence action was not filed within the four-year statute of limitations, the court sustained Jezerinac's motion for summary judgment and, in a separate entry, also granted summary judgment to Glavan for the same reasons.
 {¶ 4} On September 23, 2004, Exxcel filed a motion for summary judgment, or, in the alternative, a motion to exclude plaintiff's representatives from testifying at trial. Plaintiff failed to respond to the motion, and the trial court on October 20, 2004 granted the motion, noting plaintiff's lack of response and indicating only that it was granting the motion "for good cause shown."
 {¶ 5} Plaintiff appeals, assigning the following errors:
 I. The Trial Court Improperly Granted Appellee Exxcel Project Management Inc.'s Motion For Summary Judgment, As Same Was Filed Without Leave Of Court And The Dispositive Motion Date Set By The Trial Court, As Reflected In The Record at R. 90, R. 108 and R. 109.
 II. The Trial Court Erred To The Prejudice Of Appellant In Granting Summary Judgment For Appellee Exxcel Project Management, Inc. Against Appellant As Reflected In The Record at R. 108, R. 109.
 III. The Trial Court Erred To The Prejudice Of The Appellant By Sustaining Appellees Jezerinac, Geers Associates And Glavan 
Associates' Motions For Summary Judgment As Reflected In The Record At R. 80, R. 81, R. 83 and R. 84.
 {¶ 6} An appellate court's review of summary judgment is conducted under a de novo standard. Coventry Twp. v. Ecker
(1995), 101 Ohio App.3d 38, 41; Koos v. Cent. Ohio Cellular, Inc. (1994), 94 Ohio App.3d 579, 588. Summary judgment is proper only when the party moving for summary judgment demonstrates: (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in its favor. Civ.R. 56; State ex rel. Grady v. State Emp. Relations Bd. (1997), 78 Ohio St.3d 181.
 {¶ 7} We first address plaintiff's second assignment of error; it alleges the trial court erred in granting summary judgment to Exxcel because Exxcel, as movant, did not meet its initial burden of demonstrating that plaintiff lacks evidence supporting the allegations of its complaint. Exxcel's motion for summary judgment asserts it is entitled to judgment as a matter of law because (1) plaintiff's complaint did not indicate how Exxcel breached its contract with plaintiff, and (2) plaintiff did not comply with Exxcel's requested discovery, which would have allowed Exxcel to determine the basis for the breach of contract claim.
 {¶ 8} Initially, plaintiff's failure to respond to Exxcel's motion for summary judgment does not, by itself, warrant that the motion be granted. Morris v. Ohio Cas. Ins. Co. (1988), 35 Ohio St.3d 45, 47. Rather, even where the nonmovant completely fails to respond to the summary judgment motion, the trial court's analysis should focus upon whether the movant has satisfied its initial burden of showing that reasonable minds could only conclude the case should be decided against the nonmoving party. Id.; Marshall v. McGlone (June 16, 2000), Montgomery App. No. 18125; Bank One, Columbus N.A. v. Girardi's Restaurant Bar, Inc. (Mar. 3, 1994), Franklin App. No. 93AP-1024. Only then should the court address whether the nonmovant has met its reciprocal burden of establishing that a genuine issue remains for trial. Marshall, supra.
 {¶ 9} Nor does plaintiff's alleged failure to respond to discovery support the trial court's decision granting summary judgment to Exxcel. If plaintiff failed to comply with Exxcel's discovery requests, Exxcel's remedy was a motion to compel discovery under Civ.R. 37. If the trial court ordered discovery and plaintiff failed to comply with the order, Exxcel could have requested sanctions against plaintiff, including dismissing plaintiff's complaint. Standing alone, however, plaintiff's failure to respond to Exxcel's discovery requests does not entitle Exxcel to summary judgment.
 {¶ 10} Similarly unpersuasive is Exxcel's contention that it is entitled to summary judgment because plaintiff's complaint fails to set forth precisely how Exxcel breached its contract with plaintiff. While deficiencies in plaintiff's complaint may prompt Exxcel to file a motion for a more definite statement under Civ.R. 8, such deficiencies in plaintiff's complaint do not entitle Exxcel to summary judgment.
 {¶ 11} Plaintiff's second assignment of error thus reduces to whether Exxcel presented evidence that met its burden under Civ.R. 56 and shifted the burden of going forward with evidence to plaintiff. Because plaintiff concedes its complaint is time-barred as it relates to plaintiff's negligence claims, we examine only the breach of contract claim to determine whether Exxcel presented Civ.R. 56(C) documents supporting the trial court's decision to grant summary judgment to Exxcel.
 {¶ 12} Pursuant to Civ.R. 56(C), "[s]ummary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action" show that summary judgment is warranted. "No evidence or stipulation may be considered except as stated in this rule." Id. A moving party does not satisfy its burden under the rule "simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case." Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. Instead, the assertion must be supported by evidence of the type listed in Civ.R. 56(C) affirmatively showing the nonmovant has no evidence to support its claims. Id. Once the moving party discharges its initial burden, summary judgment is appropriate if the nonmoving party does not respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing that a genuine issue exists for trial. Dresher, at 293; Civ.R.56(E).
 {¶ 13} To recover upon a breach of contract claim, a plaintiff must prove "the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff." Powell v. Grant Med. Ctr. (2002), 148 Ohio App.3d 1, 10, quoting Nilavar v. Osborn (2000), 137 Ohio App.3d 469, 483. To demonstrate a breach, a plaintiff must show that the defendant failed to perform one or more terms of the contract. Little Eagle Prop. v. Ryan, Franklin App. No. 03AP-923, 2004-Ohio-3830.
 {¶ 14} Exxcel premised the substantive aspects of its summary judgment motion on plaintiff's answers to Exxcel's interrogatories. Exxcel, however, attached to its motion its own answers to plaintiff's interrogatories. Exxcel's answers do little to address Exxcel's Civ.R. 56 burden, but instead simply reiterate Exxcel's argument that it did not breach the contract. Because they fail to support Exxcel's motion, and Exxcel failed to attach any other Civ.R. 56(C) materials, Exxcel's motion fails to show Exxcel is entitled to judgment.
 {¶ 15} The only answer that comes close to addressing Exxcel's burden under Dresher is Exxcel's answer to interrogatory #16: "Does Exxcel Project Management, Inc., contend that Plaintiff's damages are the result of the negligence of others beside Exxcel Project Management, Inc.? If so, state the name of the person(s) you contend were negligent and how they were negligent. Answer: Yes; owner Pizzutti, Norse Air, Inc., and unknown roofing subcontractor and others that may be identified as discovery continues." (Interrogatory, 7.) Exxcel's answer speaks to the negligence claim that plaintiff already conceded was untimely. Because Exxcel failed to utilize evidence under Civ.R. 56(C) supporting its contention that it is entitled to judgment, plaintiff was not required to respond with facts showing a genuine issue exists for trial. The trial court's decision to grant summary judgment in favor of Exxcel was, at best, premature. Cf. Columbus Retail, Inc. v. Dalt's, LLC, Franklin App. No. 04AP-735, 2005-Ohio-764.
 {¶ 16} Plaintiff's second assignment of error is sustained, rendering moot its first assignment of error.
 {¶ 17} Plaintiff's third assignment of error asserts that, because Pizzuti was an intended third-party beneficiary of the contract between Exxcel and subcontractors Glavan and Jezerinac, plaintiff, as Pizzuti's subrogee, stood in the shoes of Pizzuti and could sue Glavan and Jezerinac for breach of contract.
 {¶ 18} The construction of a written contract is a matter of law for the court. Alexander v. Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241, paragraph one of the syllabus; Corna/Kokosing Constr. Co. v. South Western City School Dist. Bd. of Edn.,
Franklin App. No. 02AP-624, 2002-Ohio-7028, at ¶ 14. "The intent of the parties to a contact is presumed to reside in the language they chose to employ in the agreement." Kelly v. Medical Life Ins. Co. (1987), 31 Ohio St.3d 130, paragraph one of the syllabus. A court construes a contract against the drafter, but when the terms are unambiguous and clear on their face, the court need not go beyond the plain language of the contract to determine the rights and obligations of the parties. EFA Assoc., Inc. v. Dept. of Adm. Serv., Franklin App. No. 01AP-1001, 2002-Ohio-2421, at ¶ 31.
 {¶ 19} To establish standing to sue both Glavan and Jezerinac for breach of contract, plaintiff had to show that Pizzuti was an intended, not merely an incidental, beneficiary of the contract between Exxcel and its subcontractors. As this court stated in Berge v. Columbus Community Cable Access (1999), 136 Ohio App.3d 281, 303 "[a] third-party beneficiary is one for whose benefit a promise is made, but who is not a party to the contract encompassing the promise. Chitlik v. Allstate Ins. Co.
(1973), 34 Ohio App.2d 193, 196. * * * An intended beneficiary has enforceable rights under the contract, in contrast to an incidental beneficiary, who has no rights of enforcement. Hill v. Sonitrol of Southwestern Ohio (1988), 36 Ohio St.3d 36, 40."
 {¶ 20} "To have an intended beneficiary, the contract must be entered into with the intent to benefit that person. Doe v. Adkins (1996), 110 Ohio App.3d 427, 436." Berge, at 303. Thus, where the performance of a promise under the contract satisfies a duty owed by the promisee to the third-party beneficiary, he or she is an intended beneficiary, but where the performance of a promise merely confers some benefit and is not in satisfaction of a duty, the third-party beneficiary is an incidental beneficiary.
 {¶ 21} In Corporex Dev. Constr. Mgmt., Inc. v. Shook, Inc., Franklin App. No. 03AP-269, 2004-Ohio-1408, appeal accepted for review, 103 Ohio St.3d 1409, 2004-Ohio-4068, this court addressed whether a real estate developer was an intended beneficiary of a contract between a contractor and a subcontractor. In that case, we cited TRINOVA Corp. v. Pilkington Brothers, P.L.C. (1994), 70 Ohio St.3d 271, as authority for application of the "intent to benefit" test and the need for evidence that the subcontractor must have intended to directly benefit a third party, not simply confer an incidental benefit on an unrelated party. TRINOVA emphasized that, in order to maintain a cause of action for breach of contract, there first must be evidence that the promisee assumed a duty to the third party, and that the contract was made and entered into with the intent to benefit the third party.
 {¶ 22} Corporex concluded that, although some sections of the contract in that case conferred benefits upon the developer, the evidence was insufficient to show that the developer was either a party to the contract or an intended third-party beneficiary. Referencing 9 Corbin on Contracts (2002 Interim Ed.) Section 779D, at 40-41. Corporex explained that contracts between a principal and subcontractors are "made to enable the principal contractor to perform; and their performance by the subcontractor does not in itself discharge the principal contractor's duty to the owner with whom he has contracted. The installation of plumbing fixtures or the construction of cement floors by a subcontractor is not a discharge of the principal contractor's duty to the owner to deliver a finished building containing those items; and if after their installation the undelivered building is destroyed by fire, the principal contractor must replace them for the owner, even though he must pay the subcontractor in full and has no right that the latter shall replace them." Id. at fn. 9.
 {¶ 23} Similarly, Glavan and Jezerinac's duties to complete the tasks assigned them under their respective contracts were duties owed to Exxcel, not to Pizzuti, and any failure to perform them in a workmanlike manner was a breach of a duty to Exxcel, not to Pizzuti.
 {¶ 24} Plaintiff nonetheless points to several sections of the respective contracts that, it contends, support its contention that Pizzuti was an intended beneficiary. For example, plaintiff notes the contract repeatedly indicates that the work done must be satisfactory to, and gain approval from, Pizzuti. Cf. Corporex (noting similar provisions in contract at issue in that case). Plaintiff additionally notes that Article 8 of the contract indicates that Pizzuti has various obligations to Glavan, and further that Exhibit A to the contract indicates Exxcel and Pizzuti have joint responsibility to perform the contract.
 {¶ 25} The two contracts, the one between Exxcel and Glavan and the one between Exxcel and Jezerinac, are identical and primarily consist of a boilerplate form entitled "Architectural Services and Consultant Agreement." Although most of the contract does not appear to have been drafted with these particular parties and this particular project in mind, the contract does identify Exxcel as the "architect," Glavan and Jezerinac as the "subcontractors" and Pizzuti as the "owner."
 {¶ 26} The specific sections plaintiff noted in support of its argument that Pizzuti was an intended beneficiary generally mention the "owner" in regard to (1) the relationship between the owner and the architect, and (2) the owner's final acceptance of the project from the contractor or architect. In the end, only two of these sections appear to potentially support plaintiff's contentions.
 {¶ 27} Section 5.2, addressing monthly payments to the subcontractor, is a poor basis for a finding that Pizzuti is an intended beneficiary as it describes the relationship in the negative: the owner or architect's approval of a subcontractor's monthly estimate is agreed not to constitute or imply acceptance by the owner. Section 4.1, however, indicates that the work performed is subject to approval of the architect or owner. In addressing whether the language of Section 4.1 is sufficient to indicate that Pizzuti is an intended beneficiary of the contract, the trial court stated that "Transcontinental was an unrelated party, not being named in the contract, but it reserved certain rights, through Pizzuti, to inspect and determine whether the work was generally acceptable. Details of the work, change orders, scheduling, etc. were the responsibility of Exxcel as the general contractor under Article 10 of the contract. The owner of the property was removed from the subcontractor's supervision by Article 8.5, which required the mediation of the Architect as to communications between the owner and the subcontractor." (April 8, 2004 Decision and Entry, 4.)
 {¶ 28} Continuing, the trial court noted "[t]he intent of Exxcel and Jezerinac, its subcontractor, to remove Pizzuti from their contract[,]" is shown in "Pizzuti being named only `for informational purposes.' This stands in stark contrast to the contract language in Point East Condominium Owners' Association, Inc. v. Cedar House Assoc. (1995) 104 Ohio App.3d 704, which held that if a sub and general contractors' agreement specified that the subcontractor is to assume the `same responsibilities' toward the owner as the responsibilities imposed upon the general by the general's contract with the owner, then the owner may be found to be a third-party beneficiary." Because "there is nothing in this matter to indicate that Pizzuti was more than an incidental beneficiary," the trial court concluded, "it or its insurer is lacking the necessary privity of contract and has no standing to bring this suit." (Decision and Entry, 4-5.)
 {¶ 29} We agree with the trial court's analysis and add that, because Section 4.1 indicates the work is subject to the approval of the architect or owner, the contract contemplates that the owner's approval is not the sole requirement, but may be offered as an alternative to the architect's approval. Such alternate approval is not sufficient to indicate that Pizzuti is intended to be a third-party beneficiary under the terms of the contract. Further, inclusion of the owner's name on the front page of the contract for "informational purposes" suggests Pizzuti is not an intended third-party beneficiary. Because the trial court did not err in concluding that no privity of contract existed between Pizzuti and Glavan or between Pizzuti and Jezerinac, the court did not err in granting summary judgment in favor of the two subcontractors. Plaintiff's third assignment of error is overruled.
 {¶ 30} Having overruled plaintiff's third assignment of error, but having sustained plaintiff's second assignment of error, rendering moot plaintiff's first assignment of error, we affirm the judgment of the trial court in part and reverse in part, and we remand this matter to the trial court for further consideration of plaintiff's breach of contract claims against Exxcel, as well as Exxcel's cross-claims against Jezerinac and Glavan.
 Judgment affirmed in part and reversed in part; case remanded.
Brown, P.J., and French, J., concur.