MARKS, Appellant,

v.

ALLSTATE INSURANCE COMPANY, Appellee.

[Cite as *Marks v. Allstate Ins. Co.*, 153 Ohio App.3d 378, 2003-Ohio-4043.]

Court of Appeals of Ohio,
Fifth District, Stark County.

No. 2002CA00417.

Decided July 28, 2003.

Landskroner–Grieco, Ltd., and Jack Landskroner; The Okey Law Firm, L.P.A., Steven P. Okey, Scott A. Washam and Alan S. Gilbert; Milberg Weiss Bershad Hynes & Lerach, William S. Dato, Kevin K. Green and Stacie L. Somers, for appellant.

Black, McCuskey, Souers & Arbaugh, Randolph L. Snow and Randall M. Traub; Sonnenschein Nath & Rosenthal and Jeffrey P. Lennard, for appellee.

WISE, Judge.

{¶ 1} Appellant, Judy Marks, appeals from the judgment of the Stark County Court of Common Pleas that determined that she was barred from bringing a direct action against appellee, Allstate Insurance Company ("Allstate"), for the recovery of postjudgment interest following settlement with Allstate's insured, Gary Willaman. The following facts give rise to this appeal.

{¶ 2} In November 1994, appellant was involved in an automobile accident with Gary Willaman. In 1996, appellant sued Willaman. However, prior to January 1997, appellant voluntarily dismissed her action against Willaman, without prejudice. In January 1997, appellant's counsel contacted Allstate and accepted a prior offer of $6,000 as full settlement of all claims against Willaman.

{¶ 3} On February 11, 1997, Allstate sent appellant's counsel a check for $6,000 and a release. Allstate requested that appellant execute the release prior to presenting the check for payment. Approximately one month later, on March 6, 1997, appellant signed the release. The release provides:

{¶ 4} "[I]n consideration of the sum of [$6,000], receipt whereof is hereby acknowledged, * * * I do hereby release and forever discharge Gary L. Willaman & Kevin Willaman and any other person, firm or corporation charged or chargeable with responsibility or liability, their heirs, representatives and assigns, from any and all claims, demands, damages, costs, expenses, loss of services, actions and causes of action, arising from any act or occurrence up to the present time and particularly on account of all personal injury, disability, property damage, loss or damages of any kind already sustained or that I may hereafter sustain in consequence of an accident that occurred on or about [November 17, 1994]."

{¶ 5} On June 14, 2002, over five years after appellant executed the release, appellant filed this action against Allstate seeking the recovery of 11 days' interest, on the settlement amount, from the date of settlement, January 31, 1997, until the date Allstate sent appellant's counsel the settlement check, February 11, 1997. Both parties filed motions for summary judgment. On November 27, 2002, the trial court granted Allstate's motion for summary judgment and denied appellant's motion for summary judgment. The trial court concluded that the case of *Peyko v. Frederick* (1986), 25 Ohio St.3d 164, 25 OBR 207, 495 N.E.2d 918, and R.C. 3929.06 barred appellant from bringing a direct action against Allstate.

{¶ 6} Appellant timely filed a notice of appeal and raises the following assignment of error for our consideration:

{¶ 7} "The trial court erred by granting defendant's motion for summary judgment."

## Summary Judgment Standard

{¶ 8} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. *Smiddy v. The Wedding Party, Inc.* (1987), 30 Ohio St.3d 35, 36, 30 OBR 78, 506 N.E.2d 212. We refer to Civ.R. 56, which provides:

{¶ 9} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."

{¶ 10} Pursuant to the above rule, a trial court may not enter summary judgment if it appears that a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the nonmoving party has no evidence to prove its case. The moving party must specifically point to some evidence that demonstrates that the nonmoving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the nonmoving party to set forth specific facts demonstrating that there is a genuine issue of material fact for trial. *Vahila v. Hall* (1997), 77 Ohio St.3d 421, 429, 674 N.E.2d 1164, citing *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264. It is based upon this standard that we review appellant's assignment of error.

{¶ 11} Appellant contends that the trial court erred when it denied her motion for summary judgment, because she was entitled to maintain an action against Allstate for the recovery of postjudgment interest. We disagree.

{¶ 12} In denying appellant's motion for summary judgment and granting Allstate's motion for summary judgment, the trial court relied upon the Ohio Supreme Court's decision in *Peyko v. Frederick*, supra, and R.C. 3929.06. In *Peyko*, the plaintiff brought an action against the tortfeasor alleging personal injury and property damage as a result of a collision between the plaintiff's motorcycle and the defendant's automobile. Id. at 164, 25 OBR 207, 495 N.E.2d 918. The plaintiff obtained judgment directly against the defendant and thereaf-

ter sought prejudgment interest under R.C. 1343.03(C). Id. at 165, 25 OBR 207, 495 N.E.2d 918.

{¶ 13} The issue before the court was whether the plaintiff could obtain access to the claims file of the defendant's insurer after the plaintiff obtained a judgment. Id. at 166, 25 OBR 207, 495 N.E.2d 918. Concluding that discovery was proper, the court noted that "[a] defendant ultimately is responsible for the payment of prejudgment interest awarded to a plaintiff as a result of the defendant's failure (or the failure of others acting on his behalf) to make a good faith effort to settle the case against him. The defendant's insurer, however, may be liable to the defendant for the amount of the prejudgment interest award, if the insurer's conduct was the basis for the award." Id. at fn. 1.

{¶ 14} The trial court also relied upon R.C. 3929.06. Section (B) of this statute prohibits an action against an insurer until 30 days after a court enters final judgment between the plaintiff and an insured tortfeasor. The trial court concluded that the Peyko decision and R.C. 3929.06 barred appellant from bringing a direct action against Allstate.

{¶ 15} In support of her assignment of error, appellant sets forth several arguments. First, appellant maintains that the settlement agreement created a new set of obligations owed to her by Allstate. Appellant claims that the record in this matter establishes that Allstate assumed direct obligations to her under the settlement agreement. Appellant refers to a letter directed to Allstate in which she accepted the offer to settle and notes that this letter was directed to Allstate and not Willaman.

{¶ 16} Appellant also maintains that these new rights and responsibilities are independent of any underlying claims originally brought by appellant against Willaman. Therefore, when Allstate settled with appellant, the settlement created a new, direct relationship between appellant and Allstate that triggered the operation of R.C. 1343.03(A): Further, because valid, applicable statutory provisions are considered a part of every contract, the settlement agreement necessarily included an implied provision that postsettlement interest was to be paid on the settlement sum. Thus, appellant concludes that because Allstate had the benefit of the money that legally was due to her, Allstate is the responsible party that must pay interest on the settlement for the lapse of time between the date of settlement and the date of payment.

{¶ 17} Second, appellant contends that because she is not bringing a third-party tort claim, the "direct action" rule is inapplicable and Allstate cannot shield itself from the duty to pay postjudgment interest. The "direct action" rule provides that "[a]n injured person may sue a tortfeasor's liability insurer, but only after obtaining judgment against the insured." *Chitlik v. Allstate Ins. Co.*

(1973), 34 Ohio App.2d 193, 63 O.O.2d 364, 299 N.E.2d 295, paragraph two of the syllabus.

{¶ 18} Appellant maintains that R.C. 3929.06 also does not apply because it applies only to actions in which a judgment awards damages to "a plaintiff for injury, death, or loss to the person or property of the plaintiff" and the current action involves a settlement agreement, not an action for personal injury or death.

{¶ 19} Appellant contends that by virtue of the settlement agreement, Allstate agreed to pay her a sum of money in exchange for the release of her claims against Willaman. Therefore, by virtue of this contract, Allstate owed the settlement debt to appellant, and Allstate must pay the postjudgment interest, as her claim arises out of the independent relationship between herself and Allstate. Appellant maintains that courts have recognized and permitted direct actions against insurance companies who were third-party insurers in an underlying tort suit when the plaintiff's claims arose out of the settlement agreement between plaintiff and insurer. These cases have involved breaches of settlement agreements and actions to enforce settlement agreements.

{¶ 20} Appellant also maintains that the *Peyko* decision does not apply because it concerns R.C. 1343.03(C), which addresses prejudgment interest. Appellant concludes that since prejudgment interest is founded on the underlying tort claim, an action against the tortfeasor is appropriate. However, as it pertains to postjudgment interest, an action against the insurer is appropriate, since interest is based on the settlement agreement negotiated by plaintiff and the tortfeasor's insurer.

{¶ 21} Third, appellant argues that she did not waive her right to postjudgment interest when she signed the release on March 6, 1997. In support of this argument, appellant cites the Eighth District Court of Appeals' decision in *Snyder v. Lindsay* (Apr. 23, 2001), Cuyahoga App. No. 78121, 2001 WL 370516. In *Snyder*, the court of appeals explained that postjudgment interest was essentially part of the settlement agreement and plaintiffs were automatically entitled to such interest by statute and did not need to request postjudgment interest. Id. at 7–8, 2001 WL 370516. Thus, the Eighth District Court of Appeals concluded that plaintiffs did not waive postjudgment interest by signing the releases. Id. at 8, 2001 WL 370516. On appeal to the Ohio Supreme Court,[1] the court affirmed the award of interest and ordered it computed from the date of settlement, consistent with the court's decision in *Hartmann v. Duffey*, 95 Ohio St.3d 456, 2002-Ohio-2486, 768 N.E.2d 1170.

---

1. *Snyder v. Lindsay*, 96 Ohio St.3d 32, 2002-Ohio-3319, 770 N.E.2d 580.

{¶ 22} Upon review of the above arguments, we conclude that the trial court did not err when it granted Allstate's motion for summary judgment and denied appellant's motion for summary judgment. Although the settlement agreement created new rights and obligations, these new rights and obligations remained between the parties to the action, even though the tortfeasor's insurer negotiated the settlement on his behalf. This conclusion is based upon the purpose and meaning of a settlement agreement.

{¶ 23} "As a general rule of law, a settlement agreement is a compromise achieved by the adverse parties in a civil action before final judgment whereby they agree between themselves upon their respective rights and obligations, thus eliminating the necessity of judicial resolution of the controversy." *Green v. Clair* (Feb. 14, 2001), Summit App. No. 20271, at 2, 2001 WL 123469. Further, "the settlement 'extinguishes or merges the original rights or claims and correlative obligations and, where the agreement is executory, substitutes for the original claim the new rights and obligations agreed to.'" Id. at 3, 2001 WL 123469, citing *Bd. of Commrs. of Columbiana Cty. v. Samuelson* (1986), 24 Ohio St.3d 62, 63, 24 OBR 142, 493 N.E.2d 245.

{¶ 24} Based upon the above definition, the compromise was between the parties to the action, that is, Willaman and appellant. Allstate acted on behalf of Willaman in negotiating this compromise; however, the compromise remained between the original parties to the action. Allstate did not become a party to the action merely because it represented Willaman during the proceedings that eventually resulted in a settlement agreement. Indeed, in *Peyko,* the Ohio Supreme Court recognized the special function of a defendant's insurer. The court stated as follows:

{¶ 25} "It is impossible to ignore the conduct of the defendant's insurer in any determination regarding settlement efforts, unless one is to ignore the realities of litigation. The defendant's insurer conducts the pretrial negotiations and litigation and approves any offers of settlement — *all* in the defendant's name and for the defendant's benefit." (Emphasis sic.) *Peyko,* supra, 25 Ohio St.3d at 166, 25 OBR 207, 495 N.E.2d 918.

{¶ 26} Appellant refers to a letter directed to Allstate in which she accepts the offer to settle and notes that this letter was directed to Allstate and not Willaman. Appellant claims that this establishes that Allstate stepped out of its role as a third-party insurer when it negotiated the settlement with her. This conclusion ignores the fact that, in negotiating a settlement agreement, the insurer acts in the defendant's name and for the defendant's benefit. At no time does the insurer become a party to the lawsuit.

{¶ 27} The Ohio Supreme Court attempted to define the relationship between an insurer and its insured in *Griffey v. Rajan* (1987), 33 Ohio St.3d 75, 514 N.E.2d 1122. In *Griffey,* the court resisted the temptation to let its determination of whether an insurer's negligence should be imputed to its insured based upon a mechanical labeling of the relationship between an insurer and its insured. Id. at 78, 514 N.E.2d 1122. Instead, the court recognized that the insurer/insured relationship is very complex. The court stated:

{¶ 28} " 'On balance, we believe that the courts have resorted to calling this relationship agency almost by default. There is no other term in law which can accurately describe the relationship. Because there is a void in this area, courts have resorted to calling the relationship agency and have applied agency rules.' " Id., quoting *Maxman v. Farmers Ins. Exchange* (1978), 85 Mich.App. 115, 122, 270 N.W.2d 534, 536, fn. 3.

{¶ 29} The court also noted that:

{¶ 30} " 'It was * * * early stated that an insurer which elected to exercise its right to conduct the defense was not regarded as being an agent of the insured, but was rather in the position of an independent contractor. But the more modern rule is that under such a policy provision the insurer becomes the agent of the insured.' " Id., quoting 7C Appleman, Insurance Law and Practice (1979) 6, Section 4681.

{¶ 31} "The author cautions, however, that:

{¶ 32} " ' * * * [T]he relationship is more complex than will fit precisely into one of the neat niches of the law, partaking in part of an agency relationship, in part of that of an independent contractor, in many respects that of a fiduciary.' " Id., citing 7C Appleman, Insurance Law and Practice, supra, at fn. 16.

{¶ 33} Based upon the above discussion of the nature of the insurer/insured relationship, we do not conclude that Allstate became a party to the settlement agreement when it negotiated the settlement between Willaman and appellant. Allstate merely acted on behalf of Willaman. Further, the new rights and responsibilities that arose as a result of the settlement agreement remained between appellant and Willaman. Therefore, as in *Peyko* with the payment of prejudgment interest, Willaman remained responsible for the payment of post-judgment interest. We further conclude that the "direct action" rule applies and appellant is not entitled to maintain an action against Allstate. In addition to setting forth the "direct action" rule in *Chitlik,* the court also addressed plaintiff's argument that since the insurer settled the property damage claim, it admitted and acknowledged liability, and this permitted the plaintiff to sue the insurer directly for injury to his person. The court rejected this argument and stated:

{¶ 34} "[P]ayment of a claim for property damage is not tantamount to obtaining a judgment against the insured which would permit the injured person to sue the insurer under R.C. 3929.05 and 3929.06. Nor is it considered a waiver of any type which would also permit direct action against the insurer." *Chitlik,* supra, 34 Ohio App.2d at 198–199, 63 O.O.2d 364, 299 N.E.2d 295.

{¶ 35} Similarly, in the case sub judice, since appellant settled with Allstate, she did not obtain a judgment against Willaman and therefore would not be entitled to pursue a direct action against Allstate under the "direct action" rule.

{¶ 36} Our decision is consistent with this court's recent decision in *Layne v. Progressive Preferred Ins. Co.,* Stark App. Nos. 2002CA00327 and 2002CA00335, 2003-Ohio-3575, 2003 WL 21525465. In *Layne,* we concluded that the appellant was not entitled to recover postjudgment interest from Progressive from the date of oral settlement until the date of payment, because the release contained an integration clause,[2] which nullified the prior oral settlement agreement. Id. at 9, 2003 WL 21525465. Therefore, since Progressive provided full payment to Layne on the date that Layne entered into the written agreement containing the integration clause, Layne was not entitled to interest. Id. The release in the case sub judice does not contain an integration clause. However, we reach the same conclusion as we did in *Layne* for the reasons set forth above.

{¶ 37} Appellant's sole assignment of error is overruled.

{¶ 38} For the foregoing reasons, the judgment of the Court of Common Pleas, Stark County, Ohio, is hereby affirmed.

Judgment affirmed.

FARMER, P.J., and BOGGINS, J., concur.

---

2. The integration clause provided that "no promise, inducement or agreement not herein expressed has been made to [Layne], and that this release contains the entire agreement between the parties hereto." *Layne* at 8, 2003 WL 21525465.