BELLMAN et al., Appellants,

v.

AMERICAN. INTERNATIONAL GROUP et al., Appellees.

[Cite as *Bellman v. Am. Internatl. Group*, 163 Ohio App.3d 540, 2005-Ohio-5250.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–03–1301.

Decided Sept. 30, 2005.

Patrick J. Perotti, Melvyn E. Resnick, and Michael Jay Leizerman, for appellant.

Shannon J. George, for appellee Safe Auto Insurance Company.

542

Laura M. Faust and Bradley A. Wright, for appellee Leader Insurance Company.

Mark A. Johnson and Rodger L. Eckelberry, for appellees State Farm Mutual Automobile Insurance Company, Cincinnati Insurance Company, and Westfield Insurance Company.

Ernest E. Vargo, Ronald S. Okada, and Brett A. Wall, for appellee Progressive Preferred Insurance Company.

Frank G. Mazgaj and Robert L. Tucker, for appellee Grange Mutual Casualty Company.

Daniel F. Gourash and Charles W. Zepp, for appellee Great Northern Insurance Company.

Catherine H. Killam, Jeffrey P. Lennard, and Alan S. Gilbert, for appellees Allstate Insurance Company, St. Paul Fire and Marine Insurance Company, and St. Paul Mercury Insurance Company.

John W. Zeiger, Steven W. Tigges, and Stuart G. Parsell, for appellee State Auto Insurance Companies.

PIETRYKOWSKI, Judge.

{¶ 1} This class action case for R.C. 1343.03(A) interest is before the court upon an appeal from a September 29, 2003 judgment of the Lucas County Court of Common Pleas, granting the motions for summary judgment of appellees, the insurance companies, on appellants' claims for interest and dismissing the class-action complaint. Appellants raise a single assignment of error: "The trial court erred in its order of September 29, 2003 dismissing plaintiffs' complaints."

{¶ 2} The facts of this case are as follows. Appellants filed complaints against the insurance companies seeking postsettlement interest pursuant to *Hartmann v. Duffey*, 95 Ohio St.3d 456, 2002-Ohio-2486, 768 N.E.2d 1170. The case originally consisted of 27 [1] individual complaints, but the trial court consolidated them into one case. Appellants also filed individual motions for class certification against each insurance company pursuant to Civ.R. 23.

{¶ 3} In its September 29, 2003 opinion and judgment entry, regarding the eight appellants still remaining in the instant appeal, in granting summary judgment to appellees in five [2] of the underlying cases, the trial court cited *Marks*

---

1. At the time of this decision, only eight individual appellants remain. The others were previously voluntarily dismissed at either the trial-court level or this appellate level.

2. *Glass v. Allstate Ins. Co.; Saunders v. Chubb Group of Ins. Co.* (CI02–6009); *Gac v. Grange Ins. Co.; Burwell v. Safe Auto; Myrice v. State Auto Ins. Co.*

*v. Allstate Ins. Co.*, 153 Ohio App.3d 378, 2003-Ohio-4043, 794 N.E.2d 129, and ruled that appellants had not sued the proper party. In granting summary judgment to appellees in seven[3] of the underlying cases, the trial court cited *Fontbank, Inc. v. CompuServe, Inc.* (2000), 138 Ohio App.3d 801, 742 N.E.2d 674, and ruled that appellants' claims were barred by the parol-evidence rule. In granting summary judgment to appellees in four[4] of the underlying cases, the trial court ruled that appellants' claims were barred by res judicata. Further, based on its ruling granting summary judgment on the proper-party issue, to one appellee, Safe Auto Insurance Company, the trial court denied summary judgment to Safe Auto on its counterclaim against appellant Sherri Burwell for breach of her settlement agreement. Finally, the trial court ruled in favor of appellants on the issue of releases. Several appellees filed cross-appeals on this portion of the trial court's ruling.

{¶ 4} Appellate review of a trial court's grant of summary judgment is de novo. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. Accordingly, we review the trial court's grant of summary judgment independently and without deference to the trial court's determination. *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153. Summary judgment will be granted only when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 375 N.E.2d 46; Civ.R. 56(C). The burden of showing that no genuine issue of material fact exists falls upon the party who moves for summary judgment. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 294, 662 N.E.2d 264. However, once the movant supports his or her motion with appropriate evidentiary materials, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E).

{¶ 5} In their argument relative to appellees as the proper parties to a suit for *Hartmann* interest under R.C. 1343.03(A), appellants argue that the trial court misconstrued *Peyko v. Frederick* (1986), 25 Ohio St.3d 164, 25 OBR 207, 495 N.E.2d 918, and that under *Peyko*'s principles as well as those stated in *Lovewell*

---

3. Including the above mentioned underlying cases except *Myrice v. State Auto,* these additional underlying cases: *Sandridge v. Leader Ins.; Hertz v. State Farm Ins.; James Grothaus v. Progressive Ins. Co.*

4. The above-mentioned *Glass v. Allstate, Gac v. Grange, Sandridge v. Leader,* and *Hertz v. State Farm* cases.

*v. Physicians Ins. Co.* (1997), 79 Ohio St.3d 143, 679 N.E.2d 1119, the insurance companies are the proper parties.

{¶ 6} The Supreme Court of Ohio stated in *Hartmann v. Duffey*, 95 Ohio St.3d 456, 2002-Ohio-2486, 768 N.E.2d 1170, syllabus: "Pursuant to R.C. 1343.03(A), a plaintiff who enters into a settlement agreement that has not been reduced to judgment is entitled to interest on the settlement, which becomes due and payable on the date of settlement." Further, with regard to the public-policy reasons behind such an award of interest, the court stated:

{¶ 7} "[T]he entitlement to interest, whether it be prejudgment interest, postjudgment interest, or postsettlement interest, 'is allowed, not only on account of the loss which a creditor may be supposed to have sustained by being deprived of the use of his money, but on account of the gain being made from its use by the debtor.'" Id. at ¶ 12, citing *Landis v. Grange Mut. Ins. Co.* (1998), 82 Ohio St.3d 339, 342, 695 N.E.2d 1140, and *Hogg v. Zanesville Canal & Mfg. Co.* (1832), 5 Ohio 410, 424.

{¶ 8} Appellants cite the public-policy interest pronouncement in *Hartmann* as support for the insurance companies being the proper parties in the present action. Appellants contend that it is the insurance companies, which hold the settlement money, that gain by any delay between the settlement date and the date of payment. However, recently in *Rengel v. Valley Forge Ins. Co.*, 6th Dist. No. OT-03-045, 2004-Ohio-5248, 2004 WL 2334254, we had the opportunity to examine the proper-party issue related to *Hartmann* postsettlement-interest claims brought against an insurance company. Similar to five of the previously noted underlying cases in the present appeal, in *Rengel*, the underlying tort action at issue was a personal injury claim against a tortfeasor. Thus, despite any public-policy discussion in *Hartmann*, we found that the rule of law set forth in *Chitlik v. Allstate Ins. Co.* (1973), 34 Ohio App.2d 193, 63 O.O.2d 364, 299 N.E.2d 295, and *Peyko v. Frederick* (1986), 25 Ohio St.3d 164, 25 OBR 207, 495 N.E.2d 918, applied, and the tortfeasor was the proper party. We distinguished *Lovewell* as involving an award of prejudgment interest and the interpretation of the contract between the tortfeasor and his insurer. *Rengel*, 2004-Ohio-5248, 2004 WL 2334254, at ¶ 21. We found that the award of R.C. 1343.03(A) post-settlement interest was statutory in nature and the issue of from whom the interest is to be paid was a question of law. Id., ¶ 22. We went on to cite *Marks v. Allstate Ins. Co.*, 153 Ohio App.3d 378, 2003-Ohio-4043, 794 N.E.2d 129, and its discussion of the insurer/insured relationship and its application to the payment of postsettlement interest. Specifically, in *Rengel*, we stated:

{¶ 9} "In this case, appellant Rengel, with the aid of Valley Forge, negotiated a settlement with [tortfeasor] Riverfront. We agree with the *Marks* court's discussion of the insurer/insured relationship and its application to the payment

of post-settlement interest. Thus, as in *Marks,* we conclude that a tortfeasor is responsible for the payment of post-settlement interest. This does not prevent, as stated in *Peyko,* supra, the tortfeasor from seeking reimbursement from the insurer if the insurer was responsible for the delay of payment." Id. ¶ 27.

{¶ 10} Thus, in *Rengel* we concluded that the trial court did not err in dismissing the appellants' action against the tortfeasor's insurer, Valley Forge.

{¶ 11} In response to *Rengel,* in their reply brief, appellants argue that the approach suggested under *Rengel* needlessly doubles litigation. Appellants invoke the general power and authority of this court as outlined in Rep.R. 4(B) and suggest that we should not follow our own ruling in *Rengel.* We decline such an invitation. Thus, as in *Rengel,* we conclude that in the five of the eight remaining underlying cases[5] where the claim was against the tortfeasor, the tortfeasor is responsible for the payment of postsettlement interest. The insurance companies are not the proper parties in these cases. Thus, the trial court did not err in finding that there were no genuine issues of material fact and that these appellees were entitled to judgment as a matter of law on appellants' claims for interest because appellants had not sued the proper parties.

{¶ 12} Next, we will consider appellants' argument relative to application of the parol-evidence rule. This argument would necessarily apply to the remaining three underlying cases.[6] The parol-evidence rule states, " '[A]bsent fraud, mistake or other invalidating cause, the parties' final written integration of their agreement may not be varied, contradicted or supplemented by evidence of prior or contemporaneous oral agreements, or prior written agreements.' " *Galmish v. Cicchini* (2000), 90 Ohio St.3d 22, 27, 734 N.E.2d 782, quoting 11 Williston on Contracts (4th Ed.1999) 569–570, Section 33:4. The rule, therefore, "prohibits the admission of testimony regarding prior or contemporaneous oral agreements which contradict or vary the terms of written agreements." *Finomore v. Epstein* (1984), 18 Ohio App.3d 88, 89, 18 OBR 403, 481 N.E.2d 1193.

{¶ 13} Appellants cite *Snyder v. Lindsay,* 96 Ohio St.3d 32, 2002-Ohio-3319, 770 N.E.2d 580, and argue that the parol-evidence rule has no application in the present case. Appellants assert that the written settlement agreements do not vary from or conflict with the prior oral settlement agreements, as they are silent as to the exact date of settlement. Therefore, the court must look to extrinsic evidence of the settlement date, which is contained in the electronic data files of each appellee insurance company.

---

**5.** *Glass v. Allstate Ins. Co.; Saunders v. Chubb Group of Ins. Co.; Gac v. Grange Ins. Co.; Burwell v. Safe Auto; Myrice v. State Auto Ins. Co.*

**6.** *Sandridge v. Leader Ins.; Hertz v. State Farm Ins.; Grothaus v. Progressive Ins. Co.*

{¶ 14} In *Snyder,* on February 15, 2000, the parties signed a stipulated dismissal stating that the case was settled, and a confidential settlement agreement was entered into on that date. *Snyder v. Lindsay* (Apr. 12, 2001), 8th Dist. No. 78121. As part of the settlement agreement, a qualified settlement fund was established on March 13, 2000. By February 29, 2000—a date predetermined by the appellants—one appellee had paid his settlement amount. On March 24, 2000, the remaining appellees issued checks to the appellants along with a release and settlement agreement to be signed by plaintiffs. The Eighth District Court of Appeals held that interest was payable to the appellants, but that an evidentiary hearing was required on the question of when the settlement money became due and payable and, thus, when interest started to accrue. The Supreme Court of Ohio affirmed as to the award of interest, but reversed as to the remand for an evidentiary hearing. *Snyder v. Lindsay,* 96 Ohio St.3d 32, 2002-Ohio-3319, 770 N.E.2d 580. The court simply stated: "Interest is to be computed by the trial court from the date of settlement, consistent with our decision in *Hartmann v. Duffey,* 95 Ohio St.3d 456, 768 N.E.2d 1170." Id. The Eighth District Court of Appeals noted in a subsequent appeal on a different issue in the same case that "[c]onsistent with the Supreme Court's decision, the defendants tendered the interest that had accumulated on the settlement between the time it had been agreed upon, February 15, 2000 * * *." *Snyder v. Lindsay,* 8th Dist. No. 82663, 2003-Ohio-5388, 2003 WL 22310915, at ¶ 8.

{¶ 15} *Snyder* is distinguishable from the present case because there was a written stipulation of dismissal and settlement signed by the parties on February 15, 2000, making the settlement date clear. In the present case, appellants claim inapplicability of the parol-evidence rule to reach back to an oral-settlement-agreement date.

{¶ 16} We find that the recent case of *Layne v. Progressive Preferred Ins.,* 104 Ohio St.3d 509, 2004-Ohio-6597, 820 N.E.2d 867, is instructive on the issue of whether the parol-evidence rule bars extrinsic evidence of an oral-settlement date in the present case. Similar to the claims in the present case, in *Layne,* the appellant sought statutory interest under R.C. 1343.03(A) pursuant to the holding in *Hartmann v. Duffey,* 95 Ohio St.3d 456, 2002-Ohio-2486, 768 N.E.2d 1170. The court held that an integration clause in a written "release of claims" nullified an alleged prior oral agreement between the parties. *Layne,* 104 Ohio St.3d 509, 2004-Ohio-6597, 820 N.E.2d 867, ¶ 11. Therefore, the settlement date for purposes of R.C. 1343.03(A) was the date of the written agreement, and the appellant was not entitled to interest.

{¶ 17} Appellants emphasize the narrow holding of *Layne,* which involved an integration clause in the written agreement. Apparently, none of the written agreements involving the eight remaining appellants include an integration

clause. Appellees, on the other hand, assert that while an integration clause makes the presumption stronger, even in the absence of an integration clause, there still remains a presumption that any agreement reduced to writing is a complete integration of the parties' agreement. Based on some discussion by the Supreme Court of Ohio in *Layne,* we agree with appellees' contentions. Although the question in the present case—whether extrinsic evidence of an oral-settlement date is admissible in the absence of an integration clause in the subsequent written agreement—was not directly addressed by *Layne,* we believe that some of *Layne*'s discussion is instructive. In *Layne,* the Supreme Court of Ohio rejected the appellant's argument that when a release of claims containing an integration clause is silent or ambiguous on the issue, parol evidence may be offered to show the date of contracting. In doing so, the court noted the facts as follows:

{¶ 18} "But the November 15 agreement is neither silent nor ambiguous as to the date of settlement. The November 15 agreement lists only November 15 as the date of agreement and makes no mention of any prior date of agreement. The integration clause only *adds to* [the appellant's] problem with this argument * * *." (Emphasis added.) Id. at ¶ 11.

{¶ 19} Thus, it appears from the foregoing discussion in *Layne,* that even without an integration clause, the appellant claiming *Hartmann* interest based on an oral settlement agreement subsequently reduced to writing without any reference to the oral-settlement-agreement date has a "problem." The court also appears to put some responsibility on the interest claimant for failing to negotiate and document a "due and payable date." The court stated:

{¶ 20} "Further, the parties to an oral agreement such as this one must be responsible for ensuring that the date of settlement, and the due and payable date, if different, are negotiated and agreed upon. [The appellant] did not strike or modify the integration clause, *nor did he negotiate beforehand for a certain date on which interest would begin to accrue.*" (Emphasis added.) Id. at ¶ 13.

{¶ 21} Thus, under the foregoing discussion in *Layne,* even in the absence of an integration clause, if there is no written provision to the contrary concerning an alternate settlement date or "due and payable" date, the date of the written "release" or settlement agreement is the date from which *Hartmann* interest would accrue. There is additional support for this position in *Marks.* The court cited the affirmed Fifth District Court of Appeals decision in *Layne* and found that even without an integration clause in the release at issue, the appellant was not entitled to *Hartmann* interest. *Marks* at ¶ 36.

{¶ 22} In the present case, we also disagree with appellants' contention that the written release agreements at issue are silent as to the date of settlement.

All three of the agreements are dated as to the day they were executed, and appellants' signatures as of that date are notarized. Furthermore, we reject appellants' attempts to characterize these written agreements, which are titled as "releases," as somehow not actually addressing "settlement" and, thus, as not serving as a possible basis for calculation of *Hartmann* interest. The Supreme Court of Ohio in *Layne* rejected a similar argument by the appellant who characterized the written agreement as a "mere 'release of claims.'" Id., ¶ 10. The agreements at issue in the present case either state that the purpose of the releases is "to forever * * * settle * * * all claims" or that " * * * the Releasor voluntarily accepts said sum for the purpose of making a full and final * * * settlement." Therefore, any extrinsic evidence of a different date of settlement necessarily would contradict these written agreements. The parol-evidence rule prohibits such extrinsic evidence. Further, all three of the agreements indicate that as of that date, the settlement amount was "in hand paid" and/or state that the receipt and sufficiency of the amount "is hereby acknowledged." Therefore, these appellants are not entitled to *Hartmann* interest. Thus, the trial court did not err in finding that there were no genuine issues of material fact and that these appellees were entitled to judgment as a matter of law on appellants' claims for interest because the claims were barred by the parol-evidence rule.

{¶ 23} Since this court has determined that the trial court's summary-judgment ruling and dismissal of appellants' underlying complaints relative to all eight of the remaining appellees was not in error pursuant to either or both the proper party and parol-evidence-rule arguments, appellants' arguments relative to res judicata are moot. In addition, based on our findings relative to the issues raised in appellants' assignment of error, we find that the release issue raised in certain appellees' cross-appeals is rendered moot.

{¶ 24} Based on the foregoing, we find appellants' assignment of error not well taken. Accordingly, the judgment of the Lucas County Court of Common Pleas is affirmed. Appellants are ordered to pay the costs of this appeal, for which sum judgment is rendered against appellants on behalf of Lucas County and for which execution is awarded. See App.R. 24.

Judgment affirmed.

Singer, P.J., and Skow, J., concur.